KESTER W. BUCHANAN AND ORA W. BUCHANAN v. NATIONWIDE LIFE IN-SURANCE COMPANY

No. 8125SC191

(Filed 20 October 1981)

1. **Insurance § 18.1— life insurance—misrepresentations as to medical history— jury question**

   In an action to recover upon a life insurance policy in which defendant insurer contended the policy was void because insured had failed to disclose certain material medical information on the application, the trial court properly denied defendant insurer's motion for directed verdict where the evidence presented questions of fact as to whether information concerning insured's hospitalization on two occasions had been revealed to defendant through its agent and whether insured's visits to a mental health center came within the purview of questions on the application.

2. **Insurance § 18.1— life insurance—misrepresentations as to medical history—instructions concerning agent's testimony—prejudicial error**

In an action to recover upon a life insurance policy in which defendant insurer contended the policy was void because insured had failed to disclose certain material medical information on the application, the trial court erred in instructing the jury, prior to the reading by defendant's agent of medical questions and the answers thereto which were on the application, that "the questions as to who gave the answers to those questions you will resolve yourselves, but he will read you a question and response, but you are not to consider who gave him the response," where there was contradictory evidence as to whether the insured or her mother supplied the answers to the questions on the application, but it was undisputed that defendant's agent went over the questions on the form with the insured and that the insured adopted the answers as her own by signing the application, since such instruction would permit the jury to find erroneously that insured did not supply the answers and that she made no representations at all.

APPEAL by defendant from *Johnson, Judge.* Judgment entered 2 October 1980 in Superior Court, BURKE County. Heard in the Court of Appeals 23 September 1981.

Plaintiffs, as named beneficiaries, initiated this action against defendant to recover $20,000 on a life insurance policy. The defendant issued the policy, dated 21 February 1978, on the life of Joy B. Jones. The complaint alleged execution of the policy, payment of the premium, death of the insured on 20 May 1978, demand for payment, and defendant's refusal to pay. In addition, plaintiffs alleged wilful breach of contract and sought $100,000 in punitive damages.

Defendant answered, denied liability, and asserted that the insured had failed to disclose certain medical information and that such failure constituted a material and fraudulent misrepresentation to defendant for issuance of the policy. Defendant sought a dismissal of plaintiffs' complaint and a ruling that the life insurance policy was void *ab initio.*

The case was tried before a jury. The plaintiffs' evidence tended to show that on 6 February 1978 Frank Bowers, an agent for defendant, met with plaintiff Ora Buchanan and filled out an application for insurance on the life of Joy B. Jones, plaintiffs' daughter. Ora Buchanan supplied answers to the following questions pertaining to Mrs. Jones's health:

14. Have you ever been treated for or ever had any known indications of:

   a. Disease or disorder of brain or nervous system, kidney or genito-urinary tract, gall bladder, lungs, heart, blood vessels, liver, intestines, stomach, breasts or reproductive organs?  [No.]

   b. Paralysis, recurrent dizziness, fainting spells, alcoholism, narcotic addiction, drug habituation, hallucinations, high or low blood pressure?  [No.]

   c. Diabetes, sugar, albumin, blood or pus in urine, anemia or other disorders of the blood?  [No.]

   d. Allergies, disorders of skin, lymph glands, cyst, tumor or cancer? [No.]

   e. Hernia, ulcer, tuberculosis, pain or discomfort in chest?  [No.]

   f. Any form of rheumatism, rheumatic fever, bone, joint or back disorder or any chronic disease?  [No.]

   g. Any defect of sight, speech or hearing, discharging ear, lameness, loss of limb or deformity?  [No.]

15. Are you now under observation or taking treatment?  [No.]

16. Other than above, have you within the past 5 years:

   a. Had any disease, disorder, injury or operation which has not been previously mentioned?  [No.]

   b. Consulted or been treated by a doctor or other practitioner? (If consultation was for "check-up" or "physical exam" explain fully. Include symptoms and findings. If purpose of consultation was for employment physical, annual company physical or the like, so state. Give full names and addresses of all physicians.)  [Yes.]

   c. Ever been a patient or been under treatment or observation in any hospital, clinic, asylum, sanatorium or any private or government facility performing similar services?  [Yes.]

    d. Ever had X-rays, electrocardiograms or other medical tests or studies?   [No.]

DETAILS of "Yes" answers. (IDENTIFY QUESTION NUMBER, CIRCLE APPLICABLE ITEMS; Include diagnoses, dates, duration and names and addresses of all attending physicians and medical facilities.)

    16B— Flu—Dr. A. M. Lang
          1/1978—Morganton, N.C.

    16C— Normal Child Birth—Dr. Wilson
          3/1975—Hickory, N.C.

    18. To the best of your knowledge and belief are you now in sound health?   [Yes.]

According to the plaintiff Ora Buchanan, Mrs. Jones signed the application for insurance after Mr. Bowers went over it with her. Her signature appeared below a paragraph which contained the statement that "[i]t is hereby agreed and understood that . . . [a]ll statements and answers on . . . this application . . . are complete and true to the best of my knowledge and belief . . .."

Ora Buchanan further testified that at the time she paid the premium on the policy, Mr. Bowers informed her that the policy was in effect. Mrs. Jones died as a result of injuries sustained in an automobile accident and Mr. Bowers submitted a claim for plaintiffs. The defendant informed plaintiffs by letter that it was refusing payment on the policy and was returning the premium.

    Defendant's evidence consisted of testimony by Dr. A. M. Lang, Sr., a family practitioner; Susan Noggle, a clinical social worker at Foothills Mental Health Center; Dr. J. Taylor Vernon, a psychiatrist at the mental health center; and Ralph Yoder, manager of defendant's life underwriting and services operations. Bowers's testimony contradicted that of Ora Buchanan. He stated that he had met with the insured on 6 February 1978 and that Mrs. Jones herself had answered the questions on the application for life insurance. Bowers testified that during their meeting Mrs. Jones had not revealed the following: that within the past five years she had been treated at Foothills Mental Health Center; that she had, within that period, been hospitalized for injuries received in an automobile accident; or that, in December 1976, she had been hospitalized with a stomach or gastric disorder.

Dr. Lang testified that he had seen Joy Jones for the first time on 12 November 1975, when she complained of emotional tension. Dr. Lang prescribed Transzene. On 21 April 1976, Mrs. Jones complained of what appeared to be an upper respiratory infection, and she was treated for bronchial cough. In July 1976, Dr. Lang prescribed Donatel as a relaxant for her spastic stomach condition. In September of that same year, Dr. Lang saw Mrs. Jones twice for minor injuries, including a mild concussion and temporary amnesia, resulting from an automobile accident. In December 1976, Mrs. Jones was hospitalized for indigestion, upper abdominal distress, and "a history of rectal bleeding," which Dr. Lang could not confirm. Mrs. Jones was seen by Dr. Lang several times after her hospitalization, but the symptoms were minor ones.

According to Dr. Vernon and Ms. Noggle, Mrs. Jones was seen at the Foothills Mental Health Center from November 1975 until January 1977. Dr. Vernon, who saw Mrs. Jones on two occasions for approximately fifteen minutes each, treated her for an "anxiety state," which in Mrs. Jones's case "pertain[ed] to a person who is aware of being tense, experiencing some personal distress, having periods of panic where she experienced trembling, some dizziness, some medicized anxiety with pains in the stomach, palpitations." Mrs. Jones was "very tentatively" diagnosed as an "hysterical personality."

Ralph Yoder, testifying for defendant, stated that had his company known of Mrs. Jones's automobile accident with concussion and amnesia, her epigastric disorder, the possibility of rectal bleeding, and her consultations at the Foothills Mental Health Center, it would have delayed acceptance of Mrs. Jones's life insurance policy. Further investigation, including a medical examination, would have been conducted.

At the close of the evidence, the trial court submitted the following issues to the jury:

1. Did the Plaintiffs' daughter, Joy B. Jones, in her application for the insurance policy in controversy represent that she had not consulted or been treated by a doctor or other practitioner in the past five (5) years other than the ones described in the application?

ANSWER: Yes (HLH) No.

(1a)   Was said representation false?

ANSWER: No.

2. Did the Plaintiffs' daughter, Joy B. Jones, in her application for the insurance policy in controversy represent that she had not ever been a patient or been under treatment or observation in any hospital, clinic, asylum, sanatorium or any private or government facility performing similar services in the past five (5) years other than the ones described in the application?

ANSWER: No.

(2a)   Was said representation false?

ANSWER: No.

3. What amount if any, are the Plaintiffs entitled to recover of the defendant?

ANSWER: $20,000.00

From judgment for plaintiffs, defendant appeals.

   *Powell & Settlemyer, by Douglas F. Powell, for plaintiff appellees.*

   *Patton, Starnes & Thompson, by Thomas M. Starnes, for defendant appellant.*


MARTIN (Harry C.), Judge.

[1]   Defendant first assigns as error the trial court's denial of its motion for directed verdict. Plaintiffs, by proving the execution and delivery of the policy of life insurance, payment of the premium, and death of the insured, established a prima facie case, and the burden shifted to the defendant to prove that the insured made misrepresentations which voided the policy. *Tolbert v. Insurance Co.,* 236 N.C. 416, 72 S.E. 2d 915 (1952); *Willetts v. Insurance Corp.,* 45 N.C. App. 424, 263 S.E. 2d 300, *disc. rev. denied,* 300 N.C. 562 (1980). For a directed verdict in favor of the party with the burden of proof to be proper under these circumstances, there must be no conflict in the evidence, or the material facts must be admitted by the adverse party. *Hodge v. First Atlantic Corp.,* 10 N.C. App. 632, 179 S.E. 2d 855, *cert. denied,* 278 N.C.

701 (1971). *See also Bank v. Burnette*, 297 N.C. 524, 256 S.E. 2d 388 (1979).

In dispute was the evidence bearing on issues 1 and 2, which were submitted to the jury without objection. With respect to the first issue, the insurance application which was introduced at trial indicated only that insured, Mrs. Jones, had consulted with Dr. Lang in Morganton in January 1978 and that she had had a normal childbirth under Dr. Wilson in Hickory. However, Ora Buchanan testified that she had informed Bowers of Mrs. Jones's overnight hospitalization after the automobile accident. Bowers's testimony disputed this, and the application contained no reference to the accident. Mrs. Buchanan also testified that she had told Bowers that her daughter was hospitalized and under the care of Dr. Lang in December 1976 for what she believed to be the flu. According to Mrs. Buchanan, Bowers had misunderstood her and had erroneously entered the date as January 1978. Thus Mrs. Buchanan's testimony presented a question of fact as to whether that information had been revealed to defendant through its agent.

In *Jones v. Insurance Co.*, 254 N.C. 407, 119 S.E. 2d 215 (1941), it was stated that an insured is not responsible for false answers in an application for insurance if the insured is justifiably ignorant of the untrue answers, has no actual or implied knowledge of their falsity, and has been guilty of no bad faith or fraud. In *Jones*, a judgment allowing defendant's motion for nonsuit was affirmed based on the *insurer's* lack of knowledge, actual or constructive, of the falsity of the statements appearing in the application. *See also Assurance Society v. Ashby*, 215 N.C. 280, 1 S.E. 2d 830 (1939); *Inman v. Woodmen of the World*, 211 N.C. 179, 189 S.E. 496 (1937).

We find the present case distinguishable on its facts and more appropriately decided under the law stated in *Chavis v. Insurance Co.*, 251 N.C. 849, 112 S.E. 2d 574 (1960). In *Chavis*, whether responsibility for the false answers was attributable to the insured or to the agent of the company was in dispute. The defendant contended that the insured had concealed from its agent the fact that she was under treatment for a disease (cancer) from which she died within four months of the date of the policy. The Court held that defendant's assignment of error based on the

trial court's refusal to nonsuit could not be sustained. "[T]he credibility of the evidence to support the defendant's defense was a matter for the jury." *Id.* at 852, 112 S.E. 2d at 576. *See also Heilig v. Insurance Co.*, 222 N.C. 231, 22 S.E. 2d 429 (1942); *Cato v. Hospital Care Association*, 220 N.C. 479, 17 S.E. 2d 671 (1941).

We turn next to defendant's contention that any knowledge of the agent concerning the falsity of the representations would not be imputed to Nationwide. *Inman, supra.* Upon this question defendant has misapplied the law. We are not concerned here with knowledge of false representations made by an insured, but knowledge of facts which, if made, would have provided true and complete answers to the questions propounded in the application.

> [A]n insurance company cannot avoid liability on a policy issued by it by reason of any facts which were known to it at the time the policy was delivered, and that any knowledge of an agent or representative, while acting in the scope of the powers entrusted to him, will, in the absence of fraud or collusion between the insured and the agent or representative, be imputed to the company. . ..

*Cato, supra,* at 484, 17 S.E. 2d at 674. *See also Heilig, supra.*

With respect to the insured's undisclosed visits to the Foothills Mental Health Center, we believe that a jury could have found that these visits were not within the ambit of the second issue. At the mental health center the insured was a "client" of social workers. She had been seen by a psychiatrist for two short counseling sessions. In summary, the evidence adduced at trial contained conflicts concerning whether the insured had seen any doctor or had been treated at any clinic other than the ones insured had disclosed to defendant's agent. Defendant's motion for directed verdict on the issues submitted to the jury were, therefore, properly denied.

[2] Defendant next contends that the trial court erred in instructing the jury as to the manner in which evidence elicited by defendant was to be considered. The record shows that before Bowers began testifying about the questions which appeared on the insured's application for insurance, the judge gave the following instruction, to which defendant took exception:

Members of the jury, he is going to read you the questions that he asked and he is going to read you the responses that were given, and the questions as to who gave the answers to those questions you will resolve yourselves, but he will read you a question and response, but you are not to consider who gave him the response.

This instruction was clearly erroneous, and a review of the trial court's final instructions to the jury reveals no charge which corrected the court's error. The evidence clearly established that the insured, Joy B. Jones, signed the application. While there was contradictory evidence as to whether the insured or Mrs. Buchanan supplied the answers to the questions on the application form, there was no dispute about the fact that Mr. Bowers went over the questions on the form with the insured. By signing the application, she adopted the answers as her own. *Jones, supra.*

The trial judge's instruction quoted hereinabove failed to inform the jury about this aspect of the law, and his later instructions omitted any reference as to the effect of the insured's signing the application. In reviewing the issues concerning the insured's representations, the jury could have found erroneously that insured did not supply the answers and that she made no representations at all. We cannot find that this error was harmless; therefore, we find it necessary to remand this case for a new trial.

We have reviewed the additional assignments of error brought forth by the defendant, but as they are unlikely to recur at a new trial, we shall not address them.

New trial.

Judges MARTIN (Robert M.) and BECTON concur.